# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

EMMA BUTLER                         *

v.                                  *     Civil No. JKS 12-2902

CAROLYN W. COLVIN,                  *
Acting Commissioner of Social Security
                                    *

# MEMORANDUM OPINION

Plaintiff Emma Butler brought this action pursuant to 42 U.S.C. § 405(g) for review of a final administrative decision of the Commissioner of Social Security (Commissioner) denying her claim for Supplemental Security Income Benefits (SSI) under Title XVI of the Social Security Act, 41 U.S.C.§§ 216 and 223. Both parties' motions for summary judgment and Butler's alternative motion for remand (ECF Nos. 14, 15) are ready for resolution and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons set forth below, Butler's motions for summary judgment and remand will be denied and the Commissioner's motion for summary judgment will be granted.

**I.  Background.**

Butler applied for SSI, alleging onset of her disability on February 3, 2009. Her application was denied initially and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on March 15, 2011, at which Butler was represented by counsel. (R. 43). On March 22, 2011, the ALJ found that Butler was not disabled within the meaning of the Act, (R. 22-38), and the Appeals Council denied her request for review. (R. 1–3). Thus, the ALJ's determination became the Commissioner's final decision.

## II. ALJ's Decision.

The ALJ evaluated Butler's claim using the five-step sequential process set forth at 20 C.F.R. § 416.920(a). First, the ALJ determined that Butler has not engaged in substantial gainful activity since her application date. (R. 24). At step two, the ALJ concluded that Butler suffers from two severe impairments: depressive disorder and borderline intellectual functioning. *Id.* At step three, the ALJ determined that Butler does not have an impairment or combination of impairments that meet or medically equal any of the listed impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25). The ALJ found that Butler has the Residual Functional Capacity (RFC) to perform work at all exertional levels, but is nonexertionally limited in that she can only understand, remember, and execute simple instructions, and can maintain only occasional interaction with the general public. (R. 26). At step four, the ALJ found that Butler has no past relevant work. (R. 36). At step five, the ALJ found, based on testimony from a vocational expert (VE), that jobs exist in significant numbers in the national economy that Butler can perform. (R. 37). As a result, the ALJ determined that she was not disabled within the meaning of the Act. (R. 38).

## III. Standard of Review.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such

evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision when it is supported by substantial evidence. *Id.*

## IV. Discussion.

Butler raises two broad issues on appeal. The first is that the ALJ failed to follow the proper procedure for analyzing Butler's mental impairments. Butler's second claim is that the ALJ erroneously assessed her RFC.

### A. The ALJ Followed the Proper Procedure for Analyzing Butler's Mental Impairments.

Despite the ALJ's finding that she had severe mental impairments of depression and borderline intellectual functioning, Butler claims the ALJ failed to follow the required special technique to substantiate the presence of these impairments and the functional limitations they posed. Specifically, Butler claims that the ALJ: (1) failed to evaluate Butler's pertinent symptoms, signs, and laboratory findings to determine whether she had a medically determinable impairment; and (2) failed to specify the symptoms, signs, and laboratory findings that substantiated the presence of the impairment.

The proper procedure to evaluate a mental impairment, known as the "special technique,"[1] examines a claimant's pertinent symptoms, signs, and laboratory findings[2] to determine whether she has a medically determinable mental impairment or impairments. 20

---

[1] This case is analyzed under the "special technique" and mental RFC framework described in *Davis v. Astrue*, CIV. JKS 09-2545, 2010 WL 5237850 (D. Md. Dec. 16, 2010).

[2] Symptoms are the claimant's own description of an impairment. 20 C.F.R. §§ 404.1528(a) and 416.928(a). Signs, particularly psychiatric signs, are medically demonstrable abnormalities of behavior, mood, thought, memory, orientation, development, or perception that can be observed. 20 C.F.R. §§ 404.1528(b) and 416.928(b). Laboratory findings can be shown by the use of medically acceptable laboratory diagnostic techniques; in the case of mental impairments, these are psychological tests. 20 C.F.R. §§ 404.1528(c) and 416.928(c).

3

C.F.R. §§ 404.1520a(b)(1) and 416.920a(b)(1). The ALJ then rates the claimant's degree of limitation in activities of daily living, social functioning, and concentration, pace and persistence, as either none, mild, moderate, marked, or extreme, and also rates episodes of decompensation as either none, one or two, three, four or more.[3] 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4). The ALJ must then use these ratings to determine if the impairment meets, or is equivalent to, a listed mental disorder.[4] 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). If the ALJ finds that the claimant has a severe mental impairment that neither meets nor is equivalent in severity to any listing, the ALJ will then assess the claimant's RFC. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The ALJ's decision must include a specific finding as to the degree of limitation in each of the functional areas described in §§ 404.1520a(c) and 416.920a(c). 20 C.F.R. §§ 404.1520a(e)(4) and 416.920a(e)(4).

The ALJ only has to document use of the "special technique." *Davis v. Astrue*, CIV. JKS 09-2545, 2010 WL 5237850, at *3 (D. Md. Dec. 16, 2010) (citing *Burke v. Astrue,* 306 F. App'x. 312, 315 (7th Cir. 2009). In *Felton-Miller v. Astrue*, the Fourth Circuit concluded that the ALJ properly followed the special technique where he: (1) concluded, without discussion, that the claimant's depressive disorder was a severe impairment at step 2; (2) rated the claimant's limitations in the four functional areas at step 3; and (3) discussed the medical evidence pertaining to the claimant's depression when assessing her mental RFC. 459 F. App'x 226, 231 (4th Cir. 2011). In *Burke,* the Court found that the ALJ properly performed the special technique by rating the claimant in the four functional areas and providing a finding as to the degree of limitation in each area. 306 F. App'x at 315. As long as the reviewing court can discern "what

---

[3] The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4) and 416.920a(c)(4). Episodes of decompensation are exacerbations or temporary increases in symptoms or signs, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4).

[4] Listed mental disorders are found at 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.

the ALJ did and why he did it," the duty of explanation is satisfied; "administrative verbosity or pedantry" is not needed. *Piney Mountain Coal Co. v. Mays,* 176 F.3d 753, 762 n.10 (4th Cir. 1999). Even in a close call, a reviewing judge need only discern "what [the ALJ's] conclusions are and on what evidence they rest." *Id.*

Here, the ALJ performed the technique and made the determination that Butler's depressive disorder and borderline intellectual functioning were severe impairments based on medical records from treating and examining sources. (R. 25). Based on the medical and non-medical evidence, the ALJ determined that Butler has: mild restrictions of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation. (R. 25). Because Butler's mental impairments did not cause at least two "marked" limitations or one "marked limitation and "repeated" episodes of decompensation, the ALJ properly concluded that Butler did not satisfy the "B" criteria for the listing.

Because Butler did not meet a Listing at step 3 of the sequential evaluation, the ALJ appropriately assessed Butler's RFC at step 4 of the sequential evaluation. *See* 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The ALJ identified and evaluated the history of Butler's impairments as well as the pertinent symptoms, laboratory findings, clinical signs, and functional limitations. The ALJ's narrative discussion of the medical records, Butler's reports regarding her limitations, and the reports of others, reflected a "more detailed" assessment of the criteria "B" limitations identified at steps 2 and 3 of the sequential evaluation. (R. 26-36).

The ALJ discussed the reports of Dr. Lewis, Borge, Fishburne, Mathur, and Payne. The ALJ noted that Dr. Lewis assessed Butler's full-scale IQ as 72, with index scores in the

borderline intellectually deficient range. (R. 31; 226-30). Ms. Pelz recorded a GAF[5] rating of 51, "consistent with a finding of moderate . . . impairment in social or occupational functioning." (R. 31; 266). Dr. Borge reported more serious symptoms in March 2009, however, these symptoms improved with treatment from April through July. (R. 31-32; 338-46). Dr. Fishburne's May 2009 examination indicated that Butler's attention, concentration, and short-term memory fell within grossly normal limits. He rated her at 70 on the GAF scale, "consistent with a finding of mild symptoms or some difficulty in social or occupational functioning, but generally functioning pretty well, with some meaningful interpersonal relationships." (R. 33; 271). Dr. Lessans, in June 2009, reported numerous moderate impairments, such as in carrying out detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule, asking simple questions and accepting instructions, and maintaining socially appropriate behavior. He found that she was not significantly limited in following short and simple instructions, following routines and work with others, and making simple work-related decisions, and noted that she cares for her child, shops, pays bills, cleans her home, and can follow and understand simple instructions. (R. 33-34; 278-80). Dr. Payne assessed Butler in December 2009, also reporting some moderate limitations, largely attributable to her substance abuse, but that Butler was not significantly limited in most areas. He concluded that she would function best with routine tasks that could be completed at her own pace without the need for independent decision-making. (R. 34-35; 316-18).

In short, the ALJ's use of the "special technique" met the requirements set forth in *Davis* and *Felton-Miller*. The ALJ followed the proper procedure for analyzing mental impairments

---

[5] The Global Assessment of Functioning (GAF) scale is intended to measure an individual's overall level of functioning. AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. 1994). [hereinafter DSM-IV]

when he: (1) found that Butler's mental impairments constituted severe impairments at step 2; (2) rated Butler's limitations in the four functional areas; and (3) discussed in narrative form the medical and other evidence pertaining to Butler's severe impairments.

### B. The ALJ Properly Assessed Butler's RFC.

Butler's second argument is that the ALJ erroneously assessed her RFC when he determined that she could perform a full range of work at all exertional levels with nonexertional limitations. Specifically, Butler argues that the ALJ did not perform a proper function-by-function assessment after finding severe impairments. Butler claims that the ALJ: (1) failed to properly evaluate the medical evidence, and (2) failed to perform a more detailed analysis of Butler's capacity to perform the mental demands of work.

The RFC is the most work an individual can do, despite her limitations, for eight hours a day, five days a week. 20 C.F.R §§ 404.1545(a)(1) and 416.945(a)(1); SSR 96–8p, 1996 WL 374184, at *2 (July 2, 1996). An RFC assessment must include a function-by-function assessment based upon the claimant's functional limitations and ability to do work-related activities. SSR 96–8p, at *3. However, although a function-by-function analysis is required, SSR 96-8p does not require ALJs to produce a detailed statement in writing. *Davis*, 2010 WL 5237850, at *5. Rather, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, at *7; *see also Fleming v. Barnhart*, 284 F. Supp. 2d 256, 271 (D. Md. 2003). The ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on

the evidence available in the case record." SSR 96-8p, at *7; *see also Taylor v. Astrue*, CIV.A. BPG-11-0032, 2012 WL 294532, at *6 (D. Md. Jan. 31, 2012) (explaining that an RFC assessment is sufficient if it includes "a narrative discussion of [the] claimant's symptoms and medical source opinions.").

Butler faults the ALJ for not including, in the RFC or in the hypothetical to the VE, the moderate limitations set forth by the State Agency physicians. The ALJ must base the RFC assessment on "all of the relevant evidence in [the] case record." 20 C.F.R. §§ 404 .1545(a)(1) and 416.945(a)(1). Under the regulations, medical evidence is not the only evidence the ALJ must consider; rather, he must view all "relevant medical and other evidence." 20 C.F.R. §§ 404 .1545(a)(3) and 416.945(a)(3); *see also* SSR 96-5P, at *5 (requiring an ALJ to consider both medical evidence and relevant nonmedical evidence such as observations from lay witnesses and the individual's own assessment of capabilities). When evaluating medical opinion evidence, the ALJ need not accept or reject an opinion in full. Rather, the ALJ should give weight to the medical opinion to the extent that it is supported by the evidence of record. 20 C.F.R. §404.1527(c)(2). And even where the ALJ gives significant weight to a medical opinion, he is not bound by the "check the box" rankings, but rather may focus on the narrative report of the examiner. *See White v. Commissioner*, 2013 WL 105202, at *1 (D. Md. Jan 7, 2013); *Andrews v. Astrue,* Civil No. SKG–09–3061, slip op. at *39 (D. Md. Oct. 25, 2011) (noting that "even if the ALJ had not explicitly addressed each of the mental function limitations appearing on Section I of the mental RFCA, he was not required to do so.").

In the instant case, the ALJ correctly based his RFC assessment on all relevant sources of evidence including the testimony of Butler and people who knew her and the reports of the treating physicians and state agency consultants. Consistently with this evidence, the ALJ

limited Butler to simple instructions and only occasional interaction with the general public. Because the ALJ relied on all relevant evidence in the record to reach his determination and articulated the basis for his assessment, he properly assessed Butler's RFC.

**<u>Conclusion.</u>**

For the foregoing reasons, Butler's motions for summary judgment and remand will be denied and the Commissioner's motion for summary judgment will be granted. A separate Order will be entered.

Date:  November 19, 2013                               /S/                        
                                                                    JILLYN K. SCHULZE
                                                              United States Magistrate Judge